UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KWAKU KWATENG,
                        Plaintiff,

            -v-

MARTIN J. GRUENBERG, FEDERAL DEPOSIT INSURANCE CORPORATION,
                        Defendants.

21-CV-11089 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

       Plaintiff Kwaku Kwateng, proceeding *pro se*, filed this action against the Chairman of the Federal Deposit Insurance Corporation ("FDIC") Board of Directors[1] and the FDIC (together, "Defendants"), bringing claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, alleging that as an FDIC employee he was subjected to discrimination based on his race. Before the Court is Defendants' motion to dismiss for failure to state a claim on which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for failure to exhaust administrative remedies. For the reasons that follow, Defendants' motion to dismiss for failure to state a claim is denied, and Defendants' motion to dismiss for failure to exhaust administrative remedies is converted to a motion for summary judgment.

---

[1] Martin J. Gruenberg, who became Acting Chairman of the Federal Deposit Insurance Corporation Board of Directors on February 5, 2022, is automatically substituted for the former Chairman as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

1

I.  **Background**[2]

Kwateng's complaint focuses on six years of his employment as a Senior Complex Financial Institution Analyst at the FDIC. (Compl. at 15.)  Specifically, Kwateng, who is black, alleges that from early 2014 to May 2020, his employer discriminated against him by (1) providing him with terms and conditions of employment that differed from those of employees outside his protected class and (2) harassing him and/or creating a hostile work environment. (Compl. at 3, 5.)

Employees at the FDIC are permitted to teach and take classes related to their regulatory work or general career development and given a budget to use. (*See* Compl. at 15 ¶ 1, 17.) Kwateng alleges that his supervisor, James Feeney, denied him permission to teach a class or to take classes that interested him, and that when he did teach a class, Feeney denied him credit hours and required him to use his personal time to prepare (Compl. at 15 ¶ 1; 16 – 18 ¶ 4; 18 ¶ 5.)  He also alleges that Feeney gave other employees credit for Kwateng's ideas and did not recognize Kwateng (and in fact, criticized Kwateng) when Kwateng recognized and corrected vital errors and that Feeney denied Kwateng an award he was nominated for (Compl. at 15 – 16 at ¶ 2, 18 – 19 ¶ 6.)  Kwateng's earliest allegation is from March 2014, and his last specific allegation is from January 24, 2020, when his supervisor allegedly emailed him asking about a "weekly bullets" email, allegedly requiring Kwateng to provide far more detail on this weekly accounting than other employees. (Compl. at 20 – 21 ¶ 8.)

Kwateng alleges that this treatment was discrimination "based on his race" because similarly situated employees who were not black were not subjected to the same treatment. For

---

[2] The following facts are drawn from Kwateng's complaint (*see* ECF No. 1, "Compl.") and assumed true for the purposes of this opinion and order.

2

example, he notes that his supervisor complimented other employees and announced their contributions in front of the entire staff but refused to credit or announce Kwateng's contributions. (Compl. at 15 ¶ 2.) He also gives an example where his supervisor specifically called him out for using "excess credit hours" at a team meeting, though he in fact used fewer than many of his teammates. (Compl. at 16 ¶ 3.) Kwateng also notes that he was the only black employee in his group. (Compl. at 21 ¶ 8.)

Kwateng contacted an Equal Employment Opportunity ("EEO") counselor at the FDIC regarding his allegations of discrimination on July 9, 2020. (Compl. at 13, ECF No. 22 at 3.) On September 17, 2020, Kwateng filed a formal complaint of discrimination with the FDIC alleging "discrimination and harassment on the basis of [his] race." (Compl. at 5, 8–12, 15.) On November 19, 2020, the agency issued a final agency decision dismissing Kwateng's formal complaint of discrimination for "untimely EEO counselor contact." (Compl. at 5.) The Equal Employment Opportunity Commission ("EEOC") affirmed the dismissal decision on May 25, 2021, and denied Kwateng's request for reconsideration on September 28, 2021. (Compl. at 5.) Kwateng filed the complaint in this action on December 28, 2021. (ECF No. 1.)

**II.     Legal Standard**

Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and on the ground that Kwateng failed to exhaust his administrative remedies under Title VII.

**A.     Rule 12(b)(6)**

Rule 12(b)(6) authorizes a district court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a complainant must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Kwateng is proceeding *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). This duty is especially pressing "when the *pro se* plaintiff alleges that her civil rights have been violated," *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), because the purpose of affording liberal construction to *pro se* filings is fundamentally to protect "*pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (citation omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Meadows*, 963 F.3d at 243 (citation omitted).

### B.     Exhaustion

"Prior to bringing suit under [Title VII], a federal government employee must timely exhaust the administrative remedies at his disposal." *Belgrave v. Pena,* 254 F.3d 384, 386 (2d Cir. 2001) (*per curiam*) (citation and internal quotation marks omitted). EEOC regulations require that aggrieved federal employees (1) consult with a counsel at the relevant agency's Equal Employment Office within 45 days of the alleged discriminatory act, and, if the matter is not resolved after a mandatory counseling period, (2) file a formal written administrative complaint with 15 days of receipt of the EEO counselor's notice of the final interview and right to file a formal complaint. The employee may thereafter file a civil action either within 90 days

4

of notice of the final agency decision on his or her EEO complaint, or after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. *Mathirampuzha v. Potter,* 548 F.3d 70, 74 – 75 (2d Cir. 2008) (citations omitted); *see also* 42 U.S.C. § 2000e–16(c) and 29 C.F.R. §§ 1614.105(a)(1), 1614.106(a) & (b), and 1614.408(a) & (b).  This requirement is "analogous" to the requirement that a private sector employee first bring a complaint to the attention of the EEOC for resolution.  *Terry v. Ashcroft,* 336 F.3d 128, 150 (2d Cir. 2003).

## III.     Discussion

### A.     Rule 12(b)(6)

"To defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 87 (2d Cir. 2015).

Thus, if a plaintiff makes a showing that he or she (1) is a member of a protected class, (2) was qualified for the position he or she sought, (3) suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation, then the plaintiff "has satisfied the *prima facie* requirements and a presumption of discriminatory intent arises in [his] favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  Where, as here, the plaintiff does not allege that the defendant made any expressly discriminatory statements, he may support an inference of discrimination by showing that similarly situated individuals received preferential treatment.  *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). Those individuals must be similarly situated "in all material respects."  *Id.*  "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v.*

*Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). To survive a motion to dismiss, a plaintiff need only allege facts making it "plausible that a jury could ultimately determine that the comparators are similarly situated." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F.Supp.2d 679, 698 (S.D.N.Y. 2011).

Defendants argue that Kwateng has failed to establish the last element of his *prima facie* case; specifically, they argue that he has not sufficiently pleaded facts that plausibly support a minimal inference of discriminatory motivation. Kwateng has alleged that on multiple occasions, he was treated differently from similarly situated employees in his group. For example, he alleges that other employees in his group who were also under Feeney's supervision were not required to give onerously detailed weekly reports, and also that only he was singled out for using "excess credit hours," though others also used as many if not more. He also alleges that he, the sole black employee, was denied awards and met with hostility for discovering and reporting others' errors, in contrast to colleagues who were praised for contributing similar insights.

Defendants argue that these allegations are insufficient because Kwateng does not identify his colleagues for comparison with enough specificity, such as providing their title, job function, or specific supervisor, and demonstrating that all these factors are materially similar. This, however, is a question of fact requiring discovery, and indeed, much of the information required to establish a more detailed comparison is in the hands of Defendants. *See Moore v. City of New York*, No. 15 Civ. 6600, 2017 WL 35450, at *23 (S.D.N.Y. Jan. 3, 2017) (citing *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) ("The Second Circuit has ruled that pleading on information and belief in employment discrimination suits can suffice to meet the relevant plausibility standard when the relevant facts are particularly within the possession,

knowledge, and control of the defendant.") Plaintiff's allegations, which must be assumed true and construed liberally at this stage, provide at least minimal support for a plausible inference that his race or color was a motivating factor in the treatment he alleges. None of the cases on which Defendants rely demonstrate otherwise.[3]

### B. Hostile Work Environment

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive — that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (cleaned up). Again, Defendants appear to contest only Kwateng's establishment of the third prong. For the same reasons stated above, a Kwateng's allegations provide sufficient support for a plausible inference that his race or color was a motivating factor in the alleged hostile work environment, at least at this stage of the litigation.

Accordingly, Defendants' motion to dismiss for failure to state a claim is denied.

### C. Exhaustion

Pursuant to 29 C.F.R. § 1614.105(a)(1), Kwateng was required to initiate contact with an EEO counselor at the FDIC "within 45 days of the date of the matter alleged to be discriminatory." Defendants note that on the face of Kwateng's complaint, the last specific action he complains of occurred on January 24, 2020, which was 167 days prior to when he

---

[3] Additionally, unlike the plaintiffs in Defendants' cases, Kwateng is proceeding *pro se*, and accordingly the Court must construe his allegations liberally.

7

initiated EEO counseling on July 9, 2020. It is also clear from the face of Kwateng's complaint that his previous administrative actions failed for the same reason — failure to adhere to the 45-day statutory deadline.

Kwateng argues in response that his allegation as of January 24, 2020 was that he was required to submit "weekly" status reports and that these reports continued until at least June 2, 2020, after Kathleen M. Aguiar became Kwateng's supervisor. Even under the leniency afforded to *pro se* plaintiffs, this allegation is too vague to sustain his claim. *See, e.g.*, *German v. Pena*, 88 F. Supp. 2d 216, 220 (S.D.N.Y. 2000) (concluding that a "plaintiff's vague assertion that he contacted EEO personnel sometime within several months of the deadline for filing such complaint is legally insufficient to establish that he is entitled to pursue his claim."); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (holding that a court has no obligation to "credit conclusory allegations or legal conclusions couched as factual allegations." (citation and internal quotation marks omitted)). It is also unclear if Kwateng claims that this June 2, 2020 interaction is also an example of discrimination, given that Aguiar allegedly told Kwateng that she would "look into this process" and attempt to ease the burden. (ECF No. 22 at 5.)

Moreover, it is clear from the face of Kwateng's pleadings that his complaints to EEO concerned only his interactions with Feeney, with no mention of Aguiar. *Cf Mathirampuzha*, 548 F.3d at 75–76 (noting that a court may consider "reasonably related" claims to those that the plaintiff asserted in a timely EEO charge, but only where the conduct complained of could "reasonably be expected to grow out of the charge of discrimination" and concluding that an EEOC investigation could be reasonably expected to inquire into other instances of alleged retaliation *by the same actor*) (internal citations omitted). Nor does his complaint in this case make any mention of Aguiar. Accordingly, Kwateng has still not alleged a specific incident of

discrimination that would render his EEO contact timely. *See Briones v. Runyon,* 101 F.3d 287, 290 (2d Cir. 1996) (explaining that failure to bring a claim within the applicable time period "ordinarily" precludes a plaintiff from pursuing a discrimination claim in federal court).

Kwateng also argues that, in the alternative, he is entitled to equitable tolling of the EEO deadline. Equitable tolling is "only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights," for example by the "misleading conduct of the defendant" or by a "medical condition or mental impairment." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (alterations, citations, and internal quotation marks omitted). Kwateng's argument with regard to equitable tolling relies on new arguments and submissions raised in response to Defendants' opening brief. Therefore, Defendants request that this court convert their motion to dismiss to a motion for summary judgment on the issue of exhaustion. (ECF No. 31.)

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). This notice is "particularly important" in the case of a *pro se* litigant, because a *pro se* litigant "may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Hernandez v. Coffey,* 582 F.3d 303, 307 (2d Cir. 2009) (citations omitted). "Accordingly, *pro se* parties must have unequivocal notice of the meaning and consequences of conversion to summary judgment." *Id.* (internal quotation marks omitted).

In the Second Circuit, before a court converts a defendant's motion into a motion for summary judgment and grants it, thereby extinguishing a *pro se* plaintiff's claim, the plaintiff is

9

entitled to "(i) an opportunity to take relevant discovery and to submit any evidence relevant to the issues raised by the motion, and (ii) absent a clear indication that he already possessed such understanding, an explanation of the consequence of a grant of summary judgment, as well as of what he could do to defeat the motion." *Id.* at 309.

Accordingly, the Court hereby provides notice that it is converting Defendants' motion to dismiss because of failure to exhaust into a motion for summary judgment. The parties may conduct limited discovery focused on whether Kwateng is entitled to equitable tolling — the law of which he already appears to be well apprised of — of the 45-day EEO deadline. Following discovery, Plaintiff shall file a response within 90 days of the date of this Opinion and Order. Defendants may file a further response to any new information within 30 days of Kwateng's submission. Kwateng is advised that should the Court grant summary judgment on the issue of administrative exhaustion, it will close his case.

### IV.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied to the extent that it seeks dismissal under Rule 12(b)(6). That motion is converted to a motion for summary judgment in part, as discussed above.

The Clerk of Court is directed to close the motion at Docket Number 14.

SO ORDERED.

Dated: March 29, 2023
      New York, New York

                                          _____
                                          J. PAUL OETKEN
                                          United States District Judge