UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KWAKU KWATENG,

                    Plaintiff,

-v-

MARTIN J. GRUENBERG, FEDERAL
DEPOSIT INSURANCE
CORPORATION,

                    Defendants.

21-CV-11089 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Kwaku Kwateng, proceeding *pro se*, filed this action against the Chairman of the Federal Deposit Insurance Corporation ("FDIC") Board of Directors[1] and the FDIC (together, "Defendants") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, alleging that as an FDIC employee he was subjected to discrimination based on his race. Before the Court is Defendants' motion for summary judgment based on Kwateng's failure to exhaust administrative remedies. For the reasons that follow, Defendants' motion is granted.

**I.    Background**

    The Court assumes familiarity with the substance of Mr. Kwateng's complaint, which is covered in detail in the Court's prior opinion on Defendants' motion to dismiss. *Kwateng v. Gruenberg*, No. 21-CV-11089, 2023 WL 2691565, at *1 (S.D.N.Y. Mar. 29, 2023). At a high level, Kwateng's complaint alleges discrimination during his six years of employment as a Senior Complex Financial Institution Analyst at the FDIC, primarily involving his supervisor, James Feeney. (Compl. at 15-16.) Kwateng, who is Black, characterizes this discrimination as

---

[1] Martin J. Gruenberg, who became Acting Chairman of the Federal Deposit Insurance Corporation Board of Directors on February 5, 2022, is automatically substituted for the former Chairman as the individual defendant in this action. *See* Fed. R. Civ. P. 25(d).

both providing unequal terms and conditions of employment based on race, and harassing him and/or creating a hostile work environment. (*Id.* at 3, 5.)

Kwateng contacted an Equal Employment Opportunity ("EEO") counselor at the FDIC on July 9, 2020 (*id.* at 13), and filed a formal complaint on September 17, 2020 (*id.* at 5). On November 19, 2020, the agency dismissed Kwateng's complaint for "untimely EEO [c]ounselor contact." (*Id.*) The Equal Employment Opportunity Commission ("EEOC") affirmed the dismissal decision on May 25, 2021, and denied Kwateng's request for reconsideration on September 28, 2021. (*Id.*) Kwateng filed this action on December 28, 2021. (ECF No. 1.)

Defendants moved to dismiss the Complaint on April 13, 2022, in part arguing that Kwateng had failed to exhaust administrative remedies. (ECF No. 14.) Kwateng first responded that his EEO contact was timely, as some misconduct continued through early June 2020. (ECF No. 22 ("MTD Opp.") at 4-6.) The Court rejected this argument, finding that the underlying allegations were "too vague to sustain his claim." *Kwateng*, 2023 WL 2691565, at *4.

In the alternative, Kwateng invoked equitable tolling, relying on allegations outside of the Complaint. (MTD Opp. at 6). In response, Defendants asked the Court to convert their motion into one for summary judgment and allow limited discovery on the new arguments. (ECF No. 31 ("MTD Reply") at 5-7.) The Court granted that request. *Kwateng*, 2023 WL 2691565, at *4-5. Kwateng then served interrogatories (ECF No. 41-1), to which Defendants responded on July 11, 2023 (ECF No. 41 at 2).[2] Kwateng filed a letter in further support of his equitable tolling arguments on November 17, 2023 (ECF No. 44 ("MSJ Opp.")), to which Defendants replied on January 24, 2024 (ECF No. 49 ("MSJ Reply")).

---

[2] Kwateng requested an order compelling Defendants to respond to a second set of interrogatories on September 6, 2023 (ECF No. 40), which the Court denied (ECF No. 43).

**II.     Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In deciding a motion for summary judgment, a court must consider the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).

Kwateng is proceeding *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). This duty is especially pressing "when the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

**III.     Discussion**

Kwateng was required to contact an EEO counselor at the FDIC "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). As explained in this Court's prior decision, the most recent misconduct that Kwateng credibly alleges occurred on January 24, 2020—167 days before he contacted an EEO counselor on July 9, 2020. *See Kwateng*, 2023 WL 2691565, at *4. Kwateng's only remaining argument is for equitable tolling.

"Equitable tolling applies 'in rare and exceptional circumstances, where . . . extraordinary circumstances prevented a party from timely performing a required act, and . . . the party acted with reasonable diligence throughout the period [s]he [sought] to toll." *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 Fed. App'x. 11, 13 (2d Cir. 2018) (summary order) (quoting *Walker v.*

*Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)). "The term 'extraordinary' refers . . . to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). A party seeking equitable tolling "must further demonstrate that those circumstances caused him to miss the original filing deadline." *Id.* "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

Kwateng fails to show that equitable tolling is reasonably warranted. First, he was aware of his claims long before he contacted an EEO counselor. Kwateng's 2018 emails show that he was aware that Feeney's denials of his requests lacked valid justifications and were causing him "great psychological and emotional distress." (MSJ Opp. at 31.)³ In 2017, Kwateng wrote that he was being "singled out for excess booking of credit hours." (*Id.* at 35.) Later, but still well before the 45-day window, Kwateng called Feeney's communications "misleading" and stated that he had "reached [his] limit psychologically and mentally." (Compl. at 20.) In 2019, Kwateng confronted Feeney about a "policy" Feeney had cited in denying one of Kwateng's requests, stating "[t]here was no such policy." (MSJ Opp. at 29.) When Feeney allegedly got physical with Kwateng in January 2020, Kwateng "thought about going to file a police report," and even emailed his union representative to report the incident. (Compl. at 19.) Overall, the circumstances show that Kwateng was contemporaneously aware of the conduct underlying this case. Even if Defendants tried to conceal the true nature of their conduct, Kwateng's allegations show that such attempts were ineffective and did not prevent him from pursuing legal action.

---

³ Such psychological distress is not, on its own, an adequate basis for equitable tolling. *See Gardner v. Wansart*, No. 05-CV-3351, 2006 WL 2742043, at *5 n.4 (S.D.N.Y. Sept. 26, 2006).

The Complaint also contradicts Kwateng's claim that he did not know Defendants' conduct was discriminatory, an "essential element necessary to establish the cause of action." (MSJ Opp. at 6.) Kwateng's discrimination claim is based on the allegation that "[o]ther similarly situated employees outside of [his] protected class are not subjected to this harassing behavior." (Compl. at 21.) He was aware of this, however, long before mid-2020. As far back as 2017, Kwateng complained that he was being "singled out" for maltreatment. (MSJ Opp. at 35.) He also notes in his opposition filing that "[t]here is no material distinction among the members of [his] [t]eam," and that "all grades perform the same function." (*Id.* at 18.) This is all that Kwateng needed, and he does not credibly allege that this information was somehow hidden from him.

Kwateng's other arguments are unavailing. Kwateng contends, for example, that Defendants' failure to either "approv[e] or deny[] [his] request for a two-day writing class until [July 2023]" deprived him of vital information. (*Id.* at 21.) But the lack of a formal decision did not preclude Kwateng from pursuing a legal remedy. Kwateng first expressed his desire to attend the class and failed to receive approval in "[the] fourth quarter of 2019." (*Id.*) He could have argued then, as he argues now, that the failure to approve his request was "discrimination cloaked in an administrative function." (*Id.*)

Likewise, Kwateng argues that, when he was denied authorization to "tak[e] a training course abroad," Defendants refused to "cite authority for this position . . . ." (*Id.* at 22.) Defendants' failure to "cite authority," however, did not prevent him from realizing that the denial was unlawful. Kwateng himself admits that "[f]rom this point on[,] it became evident that Mr. Feeney would not approve [Kwateng's request to use professional learning funds,] or even if he approved . . . , it would involve undue hardship and mental and psychological distress." (*Id.*)

5

Because this was "evident" at the time, Kwateng cannot now claim to have been unaware of the alleged misconduct until many years later.

It is true that Kwateng points to some facts that he could not have known at the time, such as the identities at least one similarly situated employee who received favorable treatment. (*See, e.g.*, MSJ Opp. at 7.)  But that is not enough:  "[T]he doctrine of equitable tolling 'does not permit plaintiffs to suspend the time for filing discrimination complaints indefinitely when they discover instances of treatment of other employees months or years after [an adverse action].'" *Fausto v. Reno*, 955 F. Supp. 286, 293 (S.D.N.Y. 1997) (report and recommendation adopted) (quoting *Pacheco v. Rice*, 966 F.2d 904, 907 (5th Cir. 1992)).  Once Kwateng was aware of his cause of action, he could not delay indefinitely hoping that further helpful facts would come to light.

### IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted.  The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated: October 15, 2024
      New York, New York

_____
J. PAUL OETKEN
United States District Judge